John Lanahan, on behalf of Mr. Eastman. Welcome, Mr. Lanahan. You have 10 minutes. Do you wish to have any time? I would like to reserve 1 minute for rebuttal. 1 minute for rebuttal. Thank you. Your Honor, the central issue, the central constitutional claim in this case is that as a result of an erroneous jury instruction in Mr. Eastman's state court trial, that the burden of proof was lessened. I'm sorry, the burden of proof was lessened. That is not on my amplifier. Just speak up. Okay, I have no problems about speaking up. All right, I will not be shy. The issue in the case, therefore, is that whether or not as a result of an erroneous or as a jury instruction, the burden of proof was lessened as to the two critical prosecution witnesses, two accomplice witnesses. Specifically the error is that although the jury was told under Calgic instructions that the accomplice testimony is to be viewed with suspicion, it was also then they were also told that they were to decide whether or not these two witnesses, specifically Shellam and Stanton, were accomplice witnesses. In fact, as the California Court of Appeal found, they were accomplices. It was not for the jury at that point to find them. It had been established. But by As a matter of law? Yes, as a matter of law. The judge should have given a peremptory instruction, these two women are accomplices. Correct. In other words, by saying it's up to you to decide when, in fact, that was as a matter of law, it lessened what would have been the prosecution's burden of proof concerning these critical witnesses. I have two questions. Sure. Did the state courts say the error was harmless? They did, but they did not review it as a constitutional issue. Now, we're going to talk about a constitutional issue. You know, in the federal courts, you can convict a person, even on accomplice testimony alone, without any instruction. You know that. I'm aware of that. So my first question is, number one, how do we get to a federal constitutional issue in this case if under the federal law you don't need accomplice testimony? Well, the issue is this, that if you look at what is the law in California as to how a jury should consider or how they should consider the weight of certain witnesses' testimony, an erroneous jury instruction that lessens what would be the prosecution's burden of proof under California law does, in fact, amount to a constitutional issue. In other words, it is — That's not the California law. Well, but it's — but it is lessening, ultimately, what is the strength of the evidence that the prosecution would be — would be necessary to present. So — Let me ask you — Well, I'm — so I don't want to — I mean, I understand your point. Your point is, if it isn't — if such an instruction wouldn't even be a constitutional error under federal law in federal court, why are we here? And my answer is, and I think the reason is, California can decide how juries are to decide or what weight is to be given certain witness testimony. But an instruction that erroneously tells the jury then how that witness' testimony should be considered and shifts it back to the defense when it actually should have been put on the — as an issue on the prosecution is a constitutional error. In other words, it's not whether or not the template itself has to be governed by the federal constitution. But with California laying out how a jury is to consider a certain witness' testimony, one that switches it over is a shifting of — shifting of a burden of proof that is a constitutional error. But the state — Okay. Let me ask you a second question. I'm sorry. Go ahead. No. All right. Go ahead. In this case, the state court said harmless error. Correct. And that's under a different standard. We judge error in the federal court. We — it has to be — have an effect on the jury under the Breck case. Well, what the — And how do we deal with the state court's finding of harmless error and say that the Well, the — first, the state court reviewed it as an error of state law. They did not review it as a federal constitutional claim. So — But the state — I just want to clarify. Sure. The state court did cite Papal v. Fry, which uses the constitutional standard of harmless beyond a reasonable doubt. Well, it uses it — what it — and specifically, the actual — and that is — I mean, that is really, in some ways, the focus of the case and why the district court ultimately denied this petition. The issue in Fry — and the way it was framed, the issue in Fry, was that whether under California law it would be sufficient evidence — that would be a sufficiency of the evidence claim — whether or not a accomplice's witness testimony was corroborated. And they said basically under Fry that if a witness's testimony is corroborated under California law, that's sufficient. Now, that's different, and I'm not raising — and we did not — and did not raise below or — I mean, I'm not raising in the district court that this was a sufficiency of evidence claim. The difference is that the error in this case — well, first of all, that is an error of state law, and the California court did not decide it under a harmless beyond a reasonable doubt standard. Now, I'm aware under Brecht that that is not why I'm here on a habeas. But they did not decide it under the correct standard of review as it was raised as a constitutional issue. And in page four of my excerpts of record, I do show how it was raised on direct appeal as an issue of a burden-shifting proof. But the other issue is what the California Supreme Court said, and really — and I just read Fry when I came in again today. They specifically said they would not accept the argument that was made that a witness's — that an accomplice's testimony amounted to an element, and that that's — therefore, they rejected that. But that's not really the claim that I was making in this case. The claim that we're making in this case is that basically it is a — it is an erroneous jury instruction which has told a jury that a matter that should have been foreclosed under California law — in other words, that they are accomplice instructions — was still to be decided by them. By doing so, it allowed the jury to consider these witnesses and not view them under the correct credibility standard that would be under California. And by doing so, shifted — you want to say something, and I know — I don't want to cut you off. They were also told that if the testimony were corroborated, they could accept it without viewing with distrust. Correct. No. And I'm not — And the focus shifts to the question of, was it corroborated? Well, and I — and it was. The Court of Appeals — and I'm not — and I am not in any way — I mean, I'm not challenging under the federal habeas that it was corroborated. What the Court of Appeals said when they found it was corroborated is that it was corroborated by slight evidence. So that, therefore, under Frye, it was — they rejected the sufficiency of evidence testimony by saying, okay, if we look at this, we will think that there is sufficient evidence on this accomplice testimony, which we are supposed to view with suspicion because there is slight corroboration. The constitutional claim, however, is different. The constitutional claim is that because the jury was told that they should be considering and looking at witnesses differently than they should have actually been viewed under California law as accomplice witnesses — not that they first determined whether they're accomplice witnesses and then viewed their testimony with suspicion, but that they are — that that was an error that caused the jury to not view these critical witnesses the correct way, and that is prejudicial under Brecht, not as a sufficiency of the evidence question, but as the injurious and pervasive error under Brecht. Kennedy. Doesn't the corroboration sanitize those witnesses and remove the hortatory instruction that they be viewed with suspicion? Fisher. Well, if they — if they are to be viewed with — well — Kennedy. They're viewed with suspicion in Act I, but in terms of corroborating evidence, they're not to be viewed with suspicion anymore. Fisher. Well, they're to be — well, I'm not — I'm not exactly reading that instruction. Kennedy. They're viewed with suspicion to remain throughout the case like some sort of lingering presumption. Fisher. Well, yes. Yes. In other words — yes, exactly. In fact, they — you've exactly got it correctly, that it's not as if — if an accomplice witness suddenly becomes like any other witness if there's corroborating testimony. It's, in fact, that an accomplice witness should always be viewed with suspicion and, therefore, a heightened standard of credibility to see whether or not it's corroborated exists. I guess I still don't see how this resulted in a decision by the district court that was contrary to or involved in an unreasonable application of Supreme Court precedent. Well, I don't think that we should be viewing it under that standard. In fact, that's much of what my brief is talking about. And why isn't — given the case of Himes and Early, which says even if the State Court even is silent, we still apply AEDPA, why isn't AEDPA applicable? I would love to hear this — I would love to read the decision of this panel, because I have to tell you, as I have viewed that way that Early has been argued, it would essentially allow a State court to insulate itself from any Federal constitutional claim. No, you're — it's still subject to AEDPA review. Well, but — It just has to meet the contract. What Early says is that we don't even have — the State court didn't even have to review or discuss the Federal — a constitutional claim as long as it doesn't violate the Constitution. As long as the reasons and results are consistent with the Constitution. Right. That's the U.S. Supreme Court's position, which we're bound by. Correct. Now, what I — and — but what it does not — what — I think what your question is ultimately, if extended to the logical point, is this. If a State court — let's say someone raises a constitutional claim. They raise a related State claim that has an evidentiary issue, but is not necessarily a Federal constitutional claim. The State court discusses only the State claim and ignores the Federal constitutional claim. I can't imagine that Early v. Packer or the Supreme Court would permit the — a State court to just say, we're not going to discuss it, and by the fact that we haven't even discussed it, it's now insulated from Federal review. Our case, Himes, explains what the review on appeal from habeas is and where the State court is silent on the constitutional issue. So how do you distinguish Himes from this case? Well, you'll have to — okay, I'm — you're going to have to tell me the holding of that, because that — that part I can't distinguish. I mean, I'm not — I'm not trying to evade your question. It explains that where the State court is silent or doesn't explain what the — what the constitutional holding is, you need to search the whole record to ensure that it's not objectionably unreasonable under AEDPA, under the two prongs of AEDPA. Well, but — I mean, there is — there is — there are several decisions in — from this court, and they have survived early versus Packer, that say, one, where the — where the State — where the State court never reviews the constitutional claim or ever reviews it, it is not entitled to AEDPA deference. What's your best case for that? Well, I cite them. I think Nunez v. Mueller and — Speak up. It's Nunez v. Mueller and — That was an IAC case, wasn't it? An effective sense of counsel, Nunez v. Mueller? Not — Mueller — Nunez wasn't told about a plea? Correct. I mean, I'm not — I'm not dealing ultimately with the ultimate. But essentially, Nunez v. Mueller, Ivanchik v. Stewart, and Pirtle v. Morgan all say that where there has, in fact, not been a discussion or a — where the State court has not addressed what is a properly raised Federal constitutional claim or reviewed it under the correct standard, it's not entitled to AEDPA deference. So, I mean, I'm not trying to — I'm not trying to evade your question. Where is that in Nunez? Can you cite anything specific? Okay. Well, there's — in my reply brief, I cite it on page 5. But just a second. Eastman's brief in the California Court of Appeals specifically raised the issue of which you're speaking. Correct. But the California Court of Appeals did not discuss them. Well, maybe it just didn't consider it was worthy of decision in your — in your favor. I mean, do they have to discuss every issue raised, even if it's not meritorious? Well — The result is denial. If the issue is raised, the claim has been denied. Well, they can decide to ignore a Federal constitutional claim. There's no compelling reason to say you must do so. But if it is properly raised, as it was, and if it is supported by facts which we say exist, and then one comes to Federal court saying, we raised this properly raised Federal constitutional claim with supporting facts and authority, and they ignored it, that's why one comes to Federal court. It — the Court of Appeals' decision was that the accomplished testimony was indeed sufficiently corroborated. It's clearly an adjudication of the merits of this due process claim. Well — No, the due process — I mean, you've got to say, and we are finding Federal due process was not violated under the Fourteenth Amendment. One — well, that is obviously a way to deal with it. It is a way to deal with it, but is it required? Yes. Well, but in this — well, I mean, I'm not — but let us say it is — if they do not state, and he has raised a burden-shifting issue, and we find that it does not violate Federal due process under that, then one has to see under Early v. Packer whether or not the ultimate result — resolution of the issue, if it's decided as an issue of State law, would essentially not violate or be fit with the — a Federal constitutional claim. And the issue that was decided by the California Court of Appeals is whether or not this testimony was corroborated enough to be sufficient. It was not an issue involving the burden-shifting argument that was made. So I'm not — and I'm not trying to be weasley about it. No, no, I see your point. Because I've never really understood the argument that's saying, essentially, that if a court decides — if someone raises a Federal constitutional claim and a State has no ruling on it, then that somehow or other insulates it from Federal review. I just — that can't be, because otherwise there would be no Federal habeas. I mean, that is why one doesn't — No, it would be decided as against the person who raised it, and then the question would be, would that decision be contrary to or an unreasonable application of Supreme Court jurisprudence? Well, and — and so — and my answer to that is we haven't gotten there yet. If, in fact, they had done what — Judge Beha, what you have said, that we find that this does not violate Federal due process and does not shift the burden of proof, then they get ad pedeferens. But if they don't address the claim, if they don't identify it and they never review it, then it gets independent review on Federal habeas. Because — and that is the purpose of why — that's how they get it, because you can see what they viewed, they see how they viewed the issue, and how they ruled on it in a Federal constitutional context. If they don't do that, how can a court look at that and guess? What you — what the Respondent has said is, well, let's look at the State court cases that they cited, and because some of those State court cases cite Federal cases, obviously, implicitly, they ruled on that. But they didn't identify it as that. I know I'm running out of time, but I think that — but the issue ultimately here, and I think this is the center of this case, is that because they did not review this as a Federal constitutional claim, and the issue really is ultimately whether — you may ultimately find it's not even a constitutional claim, but I think it is a burden-shifting issue. Because it was not reviewed as such under an independent review, these witnesses were the ones that actually — And was not the result of uncorroborated accomplice testimony, and therefore, the prosecution's burden of proof was never lightened. Well, if they — they can find it as a basis in terms of sufficiency of evidence under California law. You say if it's sufficient evidence to convict, then the burden of proof was never lightened. And — and the — the burden of proof instructions here as to be on reasonable doubt, you're not complaining about that?  No. But — but — correct. But it is a different — it is a different logical and legal analysis to say that because the evidence here was sufficient to convict, that they met their burden and it was not improperly shifted. Well, let me — And that's what the State court — well, wait, wait. Let me just answer the point. That's what the State court said. As opposed to an erroneous jury instruction which causes the jury to view the evidence in such a way that the burden is improperly shifted to the defense. You'll grant me this, I think, that if there is sufficient independent evidence under Winship or Jackson v. Virginia to convict Mr. Eastman. Right. Yes. Correct. Then the fact that there's an erroneous instruction as to the women's testimony to be viewed with distrust is not error, not prejudicial. Well, no. I'm not going to — I'm not going to — I get — this is where we differ. Because the jury could have found guilt without even considering the two women's testimony. Well, a court on review, in looking at a sufficiency of evidence claim, doesn't look and see whether or not, for example, trial errors are prejudicial. What they look at in a record most favorable to the prevailing party is whether there is sufficient evidence that any reasonable and rational trial error effect would have found a person guilty. That is different than saying that as a result of an erroneous jury instruction, this thoroughly, maybe otherwise rational and reasonable trial error effect viewed the case in an incorrect way and did not view these witnesses the way they should have been viewed. And by viewing them because they were not told they were accomplices, they said, you get to decide. And therefore, a jury could have said, well, I guess maybe they're not accomplices. They're just like any other witness. And they weren't just like any other witnesses. They were accomplices. And, in fact, their testimony was critical to establish whether or not Mr. Eastman was involved in this. Everybody else in this particular caper was — had been talking about before. There was clearly — everybody was involved beforehand. His involvement was much more marginal and much more tangential. The one that was absolutely critical, Shellam somewhat, and Stanton was the one that placed him there, had him being present at the scene where someone was killed, and then getting rid of him. But they got the right instruction, right, for the robbery. And the court also saw that the robbery and the murder charges were so interwoven that the jury had the correct instruction with respect to the accomplice status of those two.  Well, and I think that was an error because — Why is that an error? Well, it was an error because — Did they have the correct instruction on the — that they were accomplices with respect to the robbery? Well, I mean, the instruction that we've got specifically — I looked at that, and I don't actually see that it specifically has limited itself to the robbery. What it says is — All right. The two instructions are, you should view the testimony of an accomplice with distrust. This does not mean that you should give arbitrarily disregarded testimony. You should give that testimony the way you think it deserves after examining it with care and caution and in the light of all the evidence of the case. And you must determine whether the witness was an accomplice, as I have defined that term. The defendant has the burden of proving by a preponderance of the evidence that Tamara Shellam and Laurie Sten were accomplices in the crimes charged against the defendant Eastman and Teagard. They do not say as to which. So it did shift the burden at that point in saying, jury, you get to decide whether these are accomplices when, in fact, they really were. I mean, the point is that this was a faulty paradigm in which they should view evidence, and these were not tangential witnesses as to Mr. Eastman. These were critical witnesses, and they really had to believe what they said in order, I think, to make him part of this. Mr. Teagard was a completely different case, and there was independent other witness testimony that would have shown that he had entered this. But the issue of whether Mr. Eastman entered this as a robbery and whether or not he continued to deal with it as a robbery and therefore was guilty as a felony murder, these witnesses were critical. And so because the State court never viewed this as a constitutional issue, do you think the testimony of Miller that when he refused to help Teagard, Teagard called for Miller's shop, and Eastman showed up shortly thereafter? Right. And then Teagard got into Eastman's Cadillac just before the murder, that's what Miller said, and Eastman's car was parked in the motel the night before the man was shot, according to Parsons. Isn't that enough? Well, that's certainly enough to show he's there and he's along with it. Well, the alternative is, and the alternative would be in a trial is, Eastman thought he was going to buy drugs. He went there to buy drugs. He didn't go to go rob and kill a drug dealer. Well, I'm not saying that this is ñ that is ñ with this cast of characters, that is a very likely scenario. And the reason why Shellam and Stanton are critical in this case is they're the ones that place, specifically Stanton, place Mr. Eastman in the room with Teagard. Teagard comes back 15 minutes later saying, ìGet the hell out of here,î and gives her a gun and then claims that Mr. Eastman got rid of it. That's contradicted by other testimony, but that's the critical one that has him present at the scene of what would be a felony murder and says, ìGet rid of the murder weapon.î Well, that's what you're talking about, felony murder. I thought the charge was first-degree murder, and I'm confused. Was this first-degree murder that you're participating in the killing, or is this a felony murder? Well, it is first ñ felony murder is first-degree murder. Pardon me? Felony murder is first-degree murder. So we have to consider that if this felony occurred during the robbery, it's felony murder. Correct. In other words, well, yeah. You're saying that even ñ and if I understand your position, you're saying if you throw out the accomplished testimony completely, the government still has sufficient evidence, weaker case, but it's sufficient for the conviction. Yes. Okay. I would say yes. I'm not saying if you throw out the accomplished testimony that there wouldn't be enough that a rational trier of fact could have found. Pardon me? You're saying there's enough to support the conviction even if you threw out the accomplished testimony. Well, yeah. I'm not trying to make a fatal concession. I'm saying that I would not raise a sufficiency of the evidence claim. However, I would say that it damaged the State's case considerably enough that it would have caused a rational trier of fact to say, well, maybe he just went along to get drugs, did not know it was going to be a robbery, both because he was not part of the planning phase, and then his actions afterwards where he doesn't take any of the drugs, doesn't take any of the money, doesn't use any of the drugs, just leaves with his girlfriend after they all go back to a hotel room, is enough to say he went along thinking they were going to buy drugs and not kill someone. You can see that when accomplished testimony is corroborated, the jury can disregard the accomplished status of the witness? No. You say that stays in the case, views the stress, no matter how much corroborating evidence? Well, I mean, a jury can consider corroborating evidence and say there's enough here, we think they're okay, and that's what the juries get to do that, but that they should be correctly told from the beginning that this person is an accomplice and you have to look at it with basically this kind of heightened view or heightened suspicion throughout. And if they find enough... Regardless of corroborating testimony. Correct. Thank you. All right. Thank you. Sorry I went over, but it's always nice to talk. Very interesting argument. We kept you over. Deputy Attorney General Matthew Mulford, on behalf of Respondent. May it please the Court. Did you try the case? No. I've been on this case for about seven years. I handled the direct appeal in the California Court of Appeal, so it's been my case after the trial. How about the habeas? Yes. There was no responses required by the government in the state court habeas, but in federal court, yes, I've been the government's attorney the entire time. When I read over the opinion, of course I'm not from California, I thought the case against the defendant was that he participated in a murder, not as a felony murder, but your opponent says this was prosecuted as a felony murder. Is that your understanding? That's correct, Your Honor. Yes. So if he was engaged in a robbery and a killing took place, he's guilty of first-degree murder. That's correct, yes. And so, okay. Yes, there's been no dispute about that. There's never been any hint that Mr. Eastman is factually innocent of this case. Actually, there's no facts to show what happened when the murder took place. All we know is that he was there, according to compasses, and that there was corroboration, according to Miller, and one other witness. That's essentially correct, yes. No one knows who specifically fired the bullet that killed Mr. Anderson. What happened to Tiger? I'm sorry, what? Tiger or Tiger? I think it's Tagar, but I'm not positive. What happened to him? He was convicted of first-degree murder, and he's still in prison. Well, wasn't there evidence in this case that Tagar shot Anderson? There is a confession from Tagar that he admitted doing so, but I wasn't in the room. I don't know what happened. Again, as accomplished liability works under California law, and the felony murder rule works under California law. Let me ask you this question, and this is a bothersome question. You remember when they split up the drugs, that the defendant and petitioner here did not take any drugs? Do you remember that testimony? Not specifically. I thought, though, I read in the briefs that after the killing and when the group took the drugs, they split up among the various people, including the women, but that Eastman did not take any drugs. That's certainly possible. My memory is not clear as to that point. Well, I was in the briefs, so I'm going to take a look. So what I'm wondering about, if you threw out the accomplished testimony, taking into account that the jury didn't have to, but if you had a different burden of proof, it made the government's case a lot easier on the part of the robbery than it would have been otherwise. I suppose that's true. There's no reason to throw out accomplished testimony in this case. I think any reasonable juror in any reasonable courtroom in the country would have been highly skeptical of the testimony of nearly every witness in this case, at least the police officers investigated after the fact. These people were not particularly trustworthy and moral. I know, but these women were pretty intimately involved, and they had very important testimony. Clearly, yes. By placing this fellow in the location where the killing took place. This is true, and it's undisputed, and that has been obvious from square one. The point, I think, that we need to come back to is that the federal Constitution doesn't require any corroboration of these witnesses at all. That's true. So we're dealing with a state law issue under California Penal Code Section 1111 that provides more protection to a defendant than the federal Constitution. The other thing I was going to ask you about, how does the determination under state law, harmless error, play into the role in the federal court under the Brecht view that it's a much different standard, a much tougher standard for a defendant? How does that play into our review of Brecht? I think that makes this a very easy case, frankly, for this court. We have a finding of a state law error that has been found harmless under state law, and in my view it is almost inconceivable that a harmless state law error could ever violate a defendant's federal 14th Amendment due process rights. That's a logical inference, not necessarily a constitutional one. Well, perhaps. But I think it's a very strong logical inference, and I think the circumstances under which a harmless state law error might potentially violate the federal Constitution are- I understood Mr. Lanahan. He's saying that the distrust instruction stays in the case no matter how much corroboration there is to the accomplice's testimony, and by allowing the jury to find that these people were not accomplices in error of law, that lightened the burden of proof of the prosecution. Is your position that some lightening of the burden of proof under particular state laws, such as PC 1111, wrongly applied, does not violate a federal due process right because there's no accomplice corroboration requirement under federal law? Essentially correct, yes. I think we can imagine a circumstance if we were to hypothesize about a corrupt trial judge or a biased appellate court panel that twisted the law in ways in which it perhaps might. I think there's an old civil rights case called Bowie v. City of Columbia from the 60s in which something similar to that was found to have happened. But apart from that very unusual twisting, serious abuse of judicial power or state power, almost impossible for a state law harmless error to violate the federal Constitution. As far as getting to the specific instructions in this case, I want to emphasize that the jurors in this case were in fact instructed to distrust both of these women and that their testimony did require corroboration because there were three different counts charged in this case, a robbery, a conspiracy, and a murder. And the women pled guilty to robbery. And so the trial judge here quite properly instructed the jurors that they must distrust and corroborate these two women's testimony in this case, totally apart and separate from the murder and from the conspiracy. And reading the evidence in this case, I think there is no way to distinguish some of their testimony as going to only the robbery and some of their testimony as going to only the murder. You either believe these women or you did not. And certainly that they are questionable, they are suspicious. I think any usable person under any instructions or without any instructions would have been concerned that when they took the stand and swore to tell the truth that maybe they weren't doing it. And yet, the story they told is believable enough under the federal constitution. It is corroborated enough under California law that there's no problem, certainly from the point of view of Brecht, certainly from the point of view of the epidephrine standard, which does apply. Could you address that, please? Sure. Specifically, how it applies or? Yes. Whether epidephrine applies in a case like this where the state court either was silent or just by reference to a state decision. Yes. I'd be happy to. The statute 2254D applies to merits determination. So if we go look at the statutory text, if there is a merits determination by the state court, then 2254D and its contrary to language and unreasonable application language applies. Period. End of story. This court's opinion in Lambert v. Blodgett has a very square holding. And we cited that in our brief. So deference, EDPA, applies to the case. Now, the second I think potentially more difficult question presented by the facts here are what do we do when the state court doesn't give us enough information or partial information or no information? If the state court had said nothing, if there had been an opinion that said the word denied, then the case Your Honor referred to earlier, the Himes case and Delgado v. Lewis is another case that says the same thing, that this court must apply the 2254D language under an independent review of the entire record. And I think that would be frustrating for a judge trying to defer to something where there was no reasoning, but that's the state of the law in the circuit and the state of the law in the country as far as I know. Here we don't have nothing. Here we have a reasoned opinion. It's a very thorough opinion, and it covers state law. And this court has, I hate to say it, but it has no ability to disagree with the California Court of Appeal on state law. So we're kind of stuck with that aspect of the opinion. But there is not much in the opinion about federal law, which would, you know, for the deference purposes. Our position is that in reading the entire record that you would have to do under the independent review if it said nothing, you can look appropriately at the California cases cited by the Court of Appeal here, including particularly People v. Fry, which does contain a holding regarding federal law. So it's our position that this court's review under AEDPA, so it's not defined whether it's contrary to a Supreme Court case or not an unreasonable application of a Supreme Court case, may consider everything. That includes case law cited by a state court, particularly when that case law is the same issue and it deals with a federal constitutional ruling wrapped up in that state holding. Was that, okay. I think Mr. Lanahan has said a couple times that he's worried about insulation of cases from review, and I don't think that's really at stake here. The petitioner has the burden in both state court and in federal court to identify a federal constitutional claim, and we have conceded all along that that has happened here. In the state court of appeal, he complained about the 14th Amendment. It was denied. In federal court, he has complained about the 14th Amendment aspect of his state law instruction, and the magistrate judge wrote a very thorough opinion rejecting that. The district court adopted that opinion. Both those things were proper. So there has been no insulation in this case. This court, we're here today talking about a federal constitutional or alleged federal constitutional due process issue. The problem for Mr. Lanahan, though, is that at root, again, this is a state law issue, and so unless the state court is violating federal law routinely, there is no basis for federal habeas relief. So we're here. We can talk about it. We can discuss it. But the EDPA applies. When we look at everything in the record, we can see that the state court reasonably, certainly, rejected it as if not entirely properly, which is my position. And even if there's any doubt about that, even if there's any doubt about the reasonableness of the state court opinion, there's nothing in this record to suggest this is a harmful federal constitutional affair. Thank you very much, sir. Mr. Lanahan, a couple of minutes. Okay. Judge Bright, let me give a different answer to the how can we ever say a state court determination of harmless error, how is that different than Brecht? And I think it's apples, oranges, and kumquats. They are three different things. The state court opinion that came down, which is, and I think when they discuss this issue, it's in my excerpts of record. Specifically, they talk about it starting on excerpts of record 20 through 21. They don't talk about any, whether it's harmless beyond a reasonable doubt or whether it's the reasonable probability standard under People v. Watson. People v. Watson, which is generally how a state court will decide, how California decides a California state court error, is that they use something called the reasonable probability standard, which everyone agrees in California is lower than the Chapman standard of harmless beyond a reasonable doubt. So in viewing this, then, a state court could decide this particular claim under a lower standard of proof or a lower standard of prejudice than would be required under harmless beyond a reasonable doubt. Now, I know what the holding of Brecht is. Brecht says, however, the fact that they got it wrong over in state court does not mean that necessarily you then review it under a harmless beyond a reasonable doubt standard in federal court on a federal habeas. But they are three different standards of review. And so in looking at it, one I don't think can make the sort of a fortiori argument that somehow because there's always been a finding of harmlessness under a state court under a lower than federal constitutional standard. And do we apply the Brecht rule to the record? Is that it? Well, yes. You have to independently. If you see that a state court has, in fact, used the wrong standard of review, then they are not entitled to add pedeference because they have. That's what I'm saying.  Correct. In other words, the way I think the analysis has to go. So let's assume that they use a lower standard than harmless beyond a reasonable doubt. That is, they don't get pedeference because they have used a different standard. However, when you review it under a nondeferential standard, you still have to use Brecht. And Brecht is really neither reasonable probability nor harmless beyond a reasonable doubt. It's that pervasive and injurious language. Judge Acuda, just to give you specifically what the state court found. They were told, and this is what the opinion says. It's on page 20 of my excerpts. The trial court instructed the jury that if it determined that a robbery was committed, then Shellam and Stanton were accomplices at a matter of law as to the robbery count. It went to instruct that the jury must determine whether a witness was an accomplice and that it must determine whether a witness was an accomplice and that the defendants had the burden of proving whether Shellam and Stanton were accomplices in the crimes charged. So that was the difference. And, in fact, they found that this was a confusing instruction. But a jury could. Ultimately, what I'm saying is a jury could have looked at this instruction, could have not viewed them as they should have been viewed properly as accomplices, and it would have made a difference. Do you want the record sites where I can say they were talking about he didn't take up the drugs? I can do that. It is in the brief. I think it's on page 8 of my opening book where they specifically talk about how and the reason why, and I'll stop because I know it's been a long morning. But the defense in this case would be that without that testimony of those accomplices that specifically puts him there, he could have been called by Miller to say somebody wants a ride. No one talks about what Teagar says to him when he's in the car and when he pulls up. He says, we want to get some, somebody's got some ice, want to help buy some, want to get some, and split it. He comes along thinking that he's going to do a drug buy, not rob and kill a drug dealer. And his actions afterwards are consistent with someone who went, whoa, I had no idea what you guys were doing. I don't want any part of this. Now, a jury could see that and under a theory of felony murder say he did not conspire to rob, he did not participate in the robbery because he never knew what was going on and withdrew and therefore was not guilty of murder. And if that is the case. He didn't testify at the trial. He did not testify. Pardon? He did not testify. He had lots of priors. He ended up getting a three-strike sentence. So there's all sorts of reasons why he didn't do so. But a jury could have looked at this, and I think viewing these witnesses properly the way they should have been, they could have come up with a different result. Thank you. Thank you. All right. That concludes the calendar for today, and we stand in recess for the week. Thank you.
judges: Bright , Bea, Ikuta